836 P.2d 439

**MLM CONSTRUCTION CO., INC.,**
an Arizona corporation,
Plaintiff–Appellant,

v.

**PACE CORPORATION, a Becker/Lowrie Company, an Arizona Corporation; the Aetna Casualty and Surety Company, a Connecticut corporation, Defendants–Appellees.**

No. 1 CA–CV 90–0502.

Court of Appeals of Arizona,
Division 1, Department E.

May 14, 1992.

by MLM omitted part of a statement required by A.R.S. § 33–992.01(C)(5); and (2) whether MLM's lien was invalid because proof of service of the preliminary twenty day notice under A.R.S. § 33–992.02 was not attached to MLM's notice and claim of lien as required by A.R.S. § 33–993(A)(7). We hold that both defects were independently sufficient to invalidate MLM's lien and therefore affirm.

## FACTS AND PROCEDURE BELOW

Appellee Pace Corporation contracted to construct a shopping center on real property owned by Garden Lakes Center Associates in Phoenix. BCN Lumber, Inc., not a party to this appeal, was a subcontractor to Pace on the project. Appellant MLM Construction Company entered into a subcontract with BCN to provide rough carpentry labor and materials for $64,945.00.

MLM furnished the required materials and labor to BCN. MLM engaged a San Diego-based lien service to prepare and serve an Arizona preliminary twenty day notice pursuant to A.R.S. § 33–992.01. The lien service sent Pace a form entitled "Arizona Preliminary Notice in accordance with Arizona Revised Statutes § 33–992.01 and 33–992.02."

At all times material to this action A.R.S. § 33–992.01(C)(5) required a preliminary twenty day notice to state in bold-faced type:

**In accordance with Arizona Revised Statutes § 33–992.01, this is not a lien and this is not a reflection on the integrity of any contractor or subcontractor.**

**Notice to Property Owner**

**If bills are not paid in full for the labor, professional services, materials, machinery, fixtures or tools furnished or to be furnished, a mechanic's lien leading to the loss, through court foreclosure proceedings, of all or part of your property being improved may be placed against the property. You may wish to protect yourself against this consequence by either:**

**1. Requiring your contractor to furnish a release signed by the person or**

Peskind & Hymson, P.A. by E.J. Peskind, Scottsdale, and Strong and Pugh, P.A. by William K. Strong, Phoenix, for plaintiff-appellant.

Steptoe & Johnson by Barry J. Dale, Adam B. Campbell, Phoenix, for defendants-appellees.

## OPINION

VOSS, Presiding Judge.

MLM Construction Co., Inc. appeals from an adverse judgment on its claim against Pace Corporation and Aetna Casualty and Surety Co., Pace's surety, for recovery on a mechanics lien discharge bond. *See* Ariz. Rev.Stat.Ann. ("A.R.S.") § 33–1004. The appeal presents the following issues: (1) whether MLM's lien was invalid because the preliminary twenty day notice served

firm giving you this notice before you make payment to your contractor.

2. Using any other method or device which is appropriate under the circumstances.

The printed form on which MLM presented its preliminary twenty day notice in this case nowhere contained the language "this is not a lien and this is not a reflection on the integrity of any contractor or subcontractor."

MLM later alleged that BCN had failed to pay it $61,212.04 for materials and labor furnished. MLM timely recorded a notice and claim of lien against the Garden Lakes project. Attached was a copy of MLM's preliminary twenty day notice. At the time MLM recorded its notice and claim of lien A.R.S. § 33–993(A)(7) required a lien claimant to attach to the notice, in addition to his preliminary twenty day notice, a copy of "the proof of service required by § 33–992.02...." The form of "affidavit of proof of service of preliminary twenty day notice" on MLM's preliminary twenty day notice was entirely blank. No separate proof of service pursuant to § 33–992.02 was attached to MLM's notice and claim of lien.

MLM later commenced this action seeking damages for breach of contract against BCN, *quantum meruit* recovery against the project and its joint venturers, and foreclosure of its mechanic's lien. BCN filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court. Pace thereafter recorded a statutory discharge of lien bond underwritten by appellee Aetna Casualty and Surety Company. *See* A.R.S. § 33–1004.

MLM responded with a second amended complaint that dropped BCN as a defendant, reasserted its *quantum meruit* claim against Garden Lakes and its joint venturers, and sought recovery against Aetna on Pace's lien discharge bond. Pace and Garden Lakes both filed counterclaims that sought damages on the theory that MLM had reason to know the lien it recorded was invalid. *See* A.R.S. § 33–420. Garden Lakes moved for partial summary judgment on MLM's claim for recovery in *quantum meruit*. Pace and Aetna moved for judgment on the pleadings on MLM's claim against the lien discharge bond.

MLM filed a cross-motion for summary judgment on its bond claim and for judgment on the counterclaims. MLM simultaneously filed a notice conceding Garden Lakes' motion for partial summary judgment on MLM's claim for *quantum meruit* recovery. After the motions were fully briefed the trial court granted partial summary judgment for Garden Lakes on the *quantum meruit* claim and granted judgment on the pleadings for Pace and Aetna on MLM's bond claim. The court explained:

> The Court in granting the motion adopts a strict interpretation of the lien statute and the requirements thereof. The Court does recognize that equities lie in favor of MLM Construction, but the Court refuses to substitute its opinion for the clear mandate of the legislature in A.R.S. 33–992.01.b wherein the legislature states, "shall, as a necessary prerequisite to the validity of any claim of lien, serve ..."

The parties later stipulated that if MLM did not appeal from the trial court's judgment, Garden Lakes' and Pace's counterclaims would be dismissed with prejudice, but that if MLM appealed from the judgment their dismissal would be without prejudice. The trial court entered judgment in accordance with its rulings and the parties' stipulation. This timely appeal followed. We have jurisdiction pursuant to A.R.S. § 12–2101(B).

## SUFFICIENCY OF MLM'S PRELIMINARY TWENTY DAY NOTICE

MLM acknowledges that A.R.S. § 33–992.01(B) requires a prospective lien claimant to serve a preliminary twenty day notice "as a necessary prerequisite to the validity of any claim of lien...." It argues, however, that the legislature did not intend by this language to except preliminary twenty day notices from the settled principle that substantial compliance not inconsistent with the legislature's purpose is sufficient to perfect a mechanic's lien claim. Observing that California's prelimi-

nary twenty day notice statute is similar to Arizona's statute, MLM cites *Industrial Asphalt, Inc. v. Garrett Corp.*, 180 Cal. App.3d 1001, 226 Cal.Rptr. 17 (1986) as sustaining a lien after substantial compliance with that statute. MLM cites *Wand Corp. v. San Gabriel Valley Lumber Co.*, 236 Cal.App.2d 855, 46 Cal.Rptr. 486 (1965) for the proposition that a lien claimant's failure to follow a statutory procedure will not invalidate its lien unless the noncompliance would effectively deprive the property's owner of constructive notice of the claim. Finally, MLM cites, *inter alia, Peterman–Donnelly Engineers & Contractors Corp. v. First National Bank*, 2 Ariz. App. 321, 408 P.2d 841 (1965) for the proposition that a departure from the prescribed process for perfecting a lien will not invalidate it if the departure did not prejudice the party affected. MLM asserts that its preliminary twenty day notice supplied all the variable, non-boilerplate information required by A.R.S. § 33–992.01, and that omitting the language required by subsection (C)(5) could not have caused any loss that Pace may sustain on the project.

Pace urges that the language "necessary prerequisite to the validity of any claim of lien" in A.R.S. § 33–992.01(B) can only mean that strict compliance with the letter of the statute is required, and that we therefore need not reach the question whether MLM substantially complied in this case. Pace further argues that even if substantial compliance with A.R.S. § 33–992.01 can be sufficient in theory, the cases on which MLM relies hold that only substantial compliance "not inconsistent with the legislative purpose of the statute" will do. Here, Pace observes, the legislature found the language in question sufficiently important to require the prospective lien claimant to set it out in bold-faced type. Pace points out that MLM not only omitted the language entirely, but also failed to communicate its substance by any other means.

Arizona case law has frequently repeated the principle that the statutory requirements for mechanic's and materialmen's liens must be strictly followed to perfect a lien. *Irwin v. Murphey*, 81 Ariz. 148, 302 P.2d 534 (1956); *Union Rock & Materials Corp. v. Scottsdale Conference Center*, 139 Ariz. 268, 678 P.2d 453 (App.1983). A parallel line of Arizona cases has enunciated the complementary principle that, because the purpose of the mechanic's and materialmen's lien statutes is to protect laborers and materialmen who enhance the value of other persons' property, the statutes are remedial and must be liberally construed. See e.g. *Ranch House Supply Corp. v. Van Slyke*, 91 Ariz. 177, 370 P.2d 661 (1962). This court has harmonized these two principles as follows:

> [T]he steps required by A.R.S. § 33–993 to impose the lien must be followed but in determining what these steps are the court will give the words a meaning which is reasonable, consistent with all the language used, and conducive to the purpose to be accomplished by the enactment of the statute. Thus, substantial compliance not inconsistent with the legislative purpose is sufficient.

*Lewis v. Midway Lumber, Inc.*, 114 Ariz. 426, 431, 561 P.2d 750, 755 (App.1977).

■ We reject the view that, by designating service of the preliminary twenty day notice as "a necessary prerequisite to the validity of any claim of lien," A.R.S. § 33–992.01(B) evidences a legislative intent to foreclose application of the substantial compliance doctrine. Like A.R.S. § 33–992.01, A.R.S. § 33–993 also contains language that could be read to require strict, literal compliance with its requirements for preparing and serving a notice and claim of lien, yet the Arizona case law does not so interpret it. Further, our supreme court has found that substantial compliance with the statutory procedure for serving a preliminary twenty day notice is sufficient to validate a mechanic's lien. *Columbia Group, Inc. v. Jackson*, 151 Ariz. 76, 725 P.2d 1110 (1986).

■ We nevertheless determine that MLM's preliminary twenty day notice failed the substantial compliance test. In A.R.S. § 33–992.01(C)(5) the Arizona legislature adopted California Civil Code § 3097 almost verbatim, with one significant ex-

ception—it added at the beginning: "In accordance with Arizona Revised Statutes § 33–992.01, this is not a lien and this is not a reflection on the integrity of any contractor or subcontractor." The legislative purpose of this addition is self-evident: to ensure that all those who receive a preliminary twenty day notice are expressly informed, in a manner to which their attention will readily be called, that the document they have received does not itself constitute a lien and does not reflect on the integrity of any contractor or subcontractor involved in the project to which it relates. Although MLM's preliminary twenty day notice conveyed to its recipients the other substantive information required by A.R.S. § 33–992.01(C), it utterly failed to accomplish the purpose at which the omitted language was directed.

California courts have attached similar importance to the statutory boldfaced notice language contained in California Civil Code § 3097. In *Harold L. James, Inc. v. Five Points Ranch, Inc.*, 158 Cal.App.3d 1, 204 Cal.Rptr. 494 (1984), the lien claimant used a preliminary twenty day notice form that presented superseded statutory notice language in small print rather than the new boldfaced language required by section 3097. The court affirmed summary judgment for the owner of the property in the claimant's foreclosure action. It stated:

> The general principles of liberal construction enunciated in *Wand Corp. [v. San Gabriel Valley Lumber Co.*, 236 Cal. App.2d 855, 46 Cal.Rptr. 486 (1965)] are still good law, subject to this refinement, added by *Romak [Iron Works v. Prudential Insurance Co.*, 104 Cal.App.3d 767, 163 Cal.Rptr. 869 (1980)] and *IGA Aluminum Products [v. Manufacturers Bank*, 130 Cal.App.3d 699, 181 Cal.Rptr. 859 (1982)]: where the Legislature has provided a detailed and specific mandate as to the manner or form of serving notice upon an affected party that its property interests are at stake, any deviation from the statutory mandate will be viewed with extreme disfavor.

By specifically rejecting the old form of notice, the Legislature precluded any judicial finding that use of the former statutory notice would "substantially comply" with the directive of section 3097, subdivision (C)(5).

Having concluded that the Legislature's explicit mandate requires a finding that, as a matter of law, plaintiff's use of outdated statutory language in its preliminary notice did not substantially comply with section 3097, we need not speculate as to what, if any, deviations from the currently specified statutory lien language might permit a court to determine that such deviations did not render the subsequent lien unenforceable. The extremes are easily characterized; a misplaced, or incorrect spelling, would not necessarily render an otherwise perfect notice invalid. Likewise, a complete failure to include the modifications made by the 1976 amendment to section 3097, as occurred in the present case, manifestly does make the resultant lien invalid.

158 Cal.App.3d at 6, 204 Cal.Rptr. at 497–98.

The decisions on which MLM relies are not helpful. In *Peterman–Donnelly Engineers & Contractors Corp. v. First National Bank*, 2 Ariz.App. 321, 408 P.2d 841 (1965) the court held that a lien claimant substantially complied with the service requirement of A.R.S. § 33–993 by serving a copy of the notice and claim of lien on the law partner of the owner's statutory agent, who later signed an acknowledgement of receipt of service. The court also held the lien claimant substantially complied with the requirement that the notice and claim attach a copy of the written contract, where the claim itself detailed the contract's parties, date, purpose and consideration. In contrast, MLM's preliminary twenty day notice contained nothing that could remotely be viewed as informing its recipients that it was not a lien and did not reflect on the integrity of any contractor or subcontractor.

*James Weller, Inc. v. Hansen*, 21 Ariz. App. 217, 517 P.2d 1110 (1973) and *Westinghouse Electric Supply Co. v. Western Seed Production Corp.*, 119 Ariz. 377, 580 P.2d 1231 (App.1978) both sustained misde-

scriptions of property in a notice and claim of lien as "sufficient for identification" under the pre-August 8, 1973 text of A.R.S. § 33–993(1). The mandatory language requirement of A.R.S. § 33–992.01(C)(5), however, is clear-cut and explicit, and MLM's preliminary twenty day notice simply does not comply.

In *Industrial Asphalt, Inc. v. Garrett Corp.*, 180 Cal.App.3d 1001, 226 Cal.Rptr. 17 (1986) the affected owner was properly served with a preliminary twenty day notice, but the bankrupt contractor to whom the claimant had supplied the material was not. The court held the lien claimant's failure to serve the contractor did not invalidate the lien. It stated:

> We see no reason, in the absence of prejudice to the property owner ... why the subcontractor's failure to serve notice upon an original contractor should render unenforceable a lien against an owner who *did* receive proper notice.

*Id.* at 1007, 226 Cal.Rptr. at 20; (emphasis in original). Here, in contrast, MLM failed to comply with A.R.S. § 33–992.01(C)(5) as to every recipient of its preliminary twenty day notice, including Pace.

*Wand Corp. v. San Gabriel Valley Lumber Co.*, 236 Cal.App.2d 855, 46 Cal. Rptr. 486 (1965) and *Simkins–Hallin Lumber Co. v. Simonson*, 214 Mont. 36, 692 P.2d 424 (1984) similarly concerned genuine substantial compliance. In *Wand Corp.* the court sustained a notice and claim of lien that failed to name the contractor to whom the materials had been supplied, where the owner had admittedly received the claimant's pre-lien notice advising that it had supplied materials to contractor "Walter H. Sargent, Inc." In *Simkins–Hallin*, the court sustained a notice and claim of lien against a challenge based on its facial indication that it had been served one day late.

The instant case is analogous to *Smith Pipe & Steel Co. v. Mead*, 130 Ariz. 150, 634 P.2d 962 (1981) and *Commercial Cornice & Millwork, Inc. v. Camel Construction Service Corp.*, 154 Ariz. 34, 739 P.2d 1351 (App.1987). In *Smith Pipe & Steel*, the defendant owned two adjacent parcels

of real property. The plaintiff lien claimant provided materials for construction on the south parcel. The contractor to which the lien claimant provided the materials went bankrupt without paying, and the claimant recorded a notice and claim of lien that legally described only the north parcel. The trial court rendered judgment for the owner, and the supreme court affirmed. It stated:

> Smith contends that the erroneous description was sufficient to give notice to Mead which parcel was intended to be impressed with the lien. In making this argument, reliance is placed upon the familiar rule that the Arizona Mechanics' and Materialmen's Lien Statutes are to be liberally construed in favor of laborers and materialmen. Because the record is devoid of any indication that Mead was prejudiced by the erroneous legal description and no third-party rights were involved, Smith concludes that a liberal construction of the statute requires a finding that the lien was valid.
>
> With regard to the content of the lien, the Court of Appeals has held that former A.R.S. § 33–993 did not require that the lien claim accurately describe the legal description of the property involved. [Citations omitted.] In 1973, however, the legislature amended § 33–993 to provide that the notice and claim of lien contain "[t]he *legal description* of the lands and improvements to be charged with a lien." (Emphasis added.) In light of this change, Mead submits that Smith has not achieved even substantial compliance with the statute's "legal description" requirement in that the legal description contained in its Notice and Claim of Lien is "unambiguously erroneous" and fails to describe the correct parcel of property. We agree.

*Id.* 130 Ariz. at 151, 634 P.2d at 963; (footnote omitted).

In *Commercial Cornice*, a subcontractor's notice and claim of lien did not state the date on which labor and materials were first furnished to the job site as required by A.R.S. § 33–993(A)(6). This court af-

firmed dismissal of the subcontractor's claim for foreclosure of its lien:

> The failure to state the date labor was first furnished to a jobsite, information specifically required by the statute, does not constitute sufficient notice to the owner of the claim or substantial compliance with A.R.S. § 33–993. As stated by Division Two of the Arizona Court of Appeals, we cannot rewrite the Arizona mechanics' lien statutes:
>
>> If the default or neglect is material to the perfection of a lien, it is beyond the remedial scope of equity, in the exercise of its usual powers, to protect the lien claimant against the untoward consequences of what may be and probably was his own neglect. The courts cannot read into either the statutes or the claim of lien what is not there, or take from either what is there.
>
> *Lewis v. Midway Lumber, Inc.*, 114 Ariz. 426, 432, 561 P.2d 750, 756 (App.1977).

154 Ariz. at 37, 739 P.2d at 1354.

MLM failed to provide a preliminary twenty day notice that complied with A.R.S. § 33–992.01(C)(5), and thereby invalidated its notice and claim of lien.

## SUFFICIENCY OF NOTICE AND CLAIM OF LIEN

■ Although we need not do so we also address Pace's alternative contention that MLM's notice and claim of lien was invalid because MLM failed to attach to it an affidavit of service of the preliminary twenty day notice. A.R.S. § 33–992.02 requires a lien claimant to prove that he served his preliminary twenty day notice either by obtaining the recipients' signatures on written documents acknowledging receipt or "by affidavit of the person making such service, showing the time, place and manner of service and facts showing that such service was made in accordance with § 33–992.01." A.R.S. § 33–992.02(2). A.R.S. § 33–993(A) provides in part:

> A. ... The notice and claim of lien shall be made under oath by the claimant or someone with knowledge of the facts and shall contain:
>
> ....

7. A statement of the date the preliminary twenty day notice required by section 33–992.01 was served. *A copy of such preliminary twenty day notice and the proof of service required by section 33–992.02 shall be attached.*

(Emphasis added.)

A.R.S. § 33–981 provides: "A person required to give preliminary twenty day notice pursuant to § 33–992.01 is entitled to enforce the lien rights provided for in this section *only if* he has given such notice and *has made proof of service pursuant to § 33–992.02.*" (Emphasis added.) In view of that express language, MLM's argument that it substantially complied with A.R.S. § 33–993(A)(7) because the preliminary twenty day notice was in fact timely sent and received is unavailing.

It is undisputed that MLM never made proof of service of its preliminary twenty day notice pursuant to A.R.S. § 33–992.02. Accordingly, A.R.S. § 33–981(D) precluded it from enforcing its lien.

Affirmed.

CLABORNE and EUBANK, JJ., concur.